IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| EQUAL EMPLOYMENT ) <br> OPPORTUNITY COMMISSION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PREMIER EMPLOYEE SOLUTIONS LLC, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No.: _____ <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMAND** |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex and to provide appropriate relief to Sarah Isley ("Isley"), who was adversely affected by such practices. As alleged with greater particularity below, Plaintiff Equal Employment Opportunity Commission (the "Commission") alleges that Defendant Premier Employee Solutions LLC ("Defendant") subjected Isley to a sexually hostile work environment on the basis of her sex, female.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of North Carolina.

PARTIES

1

3. Plaintiff, the Commission, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant, an Arizona limited liability company, has continuously been doing business in the State of North Carolina and the City of Whitsett, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Isley filed a charge with the Commission alleging violations of Title VII by Defendant.

7. On May 18, 2018, the Commission issued to Defendant a Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Determination.

9. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. On August 11, 2018, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. As described in greater detail below, from in or around February 2016 through in or around April 20, 2016, Defendant engaged in unlawful employment practices at a produce production facility owned and operated by a third-party in Whitsett, North Carolina (the "Facility"), in violation of Section 703 of Title VII, § 42 U.S.C. 2000(e)-(2)(a)(1). Specifically, Defendant subjected Isley to a sexually hostile work environment on the basis of her sex, female.

13. In or around January 2016, Isley began working for Defendant, who at all relevant times provided laborers to third-parties. Isley was assigned to work at the Facility as a Chopper.

14. In or around February 2016, a male Line Lead who worked for Defendant, began to make sexual comments and engage in sexual conduct toward Isley on a daily or near daily basis. The sexual comments and conduct included by way of example:

   a. At least once a day or more, the Line Lead flicked his tongue back and forth horizontally in his mouth at Isley in a sexual manner;

   b. On multiple occasions, the Line Lead whispered sexual comments in Isley's ear while standing so close behind Isley that Isley could feel the Line Lead's penis on her buttocks;

   c. On more than one occasion, the Line Lead told Isley he thought she was attractive;

   d. On a daily or almost daily basis, the Line Lead told Isley he that he wanted to "get with" her, which Isley interpreted in a sexual manner; and

   e. On more than one occasion, the Line Lead told Isley he wanted to "eat" her, which Isley interpreted to mean engage in oral sex with her.

15. Isley opposed the Line Lead's conduct and asked him to stop.

16. In or around February 2016, Isley complained on more than one occasion to the following Defendant employees about the Line Lead's inappropriate conduct: another Line Lead (hereinafter "Line Lead 2"); her supervisor, the Staff Coordinator; and/or the first shift Onsite Coordinator. Notwithstanding Isley's complaints, Defendant failed to take prompt and effective action to stop the harassment, and the sexual harassment continued.

17. On or about February 25, 2016, the Line Lead grabbed Isley's breasts while she was getting her lunch out of the break room refrigerator. Isley pushed the Line Lead away and told him to keep his hands to himself.

18. On or about March 1, 2016, Isley told Defendant's Staff Coordinator and Onsite Manager that the Line Lead touched her breasts in the break room.

19. On or about March 1, 2016, at Defendant's request, Isley prepared and provided to Defendant a written statement concerning her sexual harassment complaint.

20. In her written statement, Isley stated that the Line Lead grabbed her breasts; that she had witnessed the Line Lead grab other women's buttocks; and Isley requested that Defendant move her to a different shift.

21. On or about March 3, 2016, a female co-worker submitted a written statement to Defendant, stating that she saw the Line Lead touch a woman's breasts, and that the Line Lead had previously touched her, the female co-worker, more than once.

22. On or about March 5, 2016, Defendant transferred Isley to a different shift, at Isley's request.

23. Defendant did not issue written discipline to the Line Lead.

24. Defendant failed to take prompt and effective action to stop the sexual harassment of Isley by the Line Lead, and the sexual harassment continued.

4

25. Between approximately March 7, 2016 and April 20, 2016, the Line Lead continued to flick his tongue at the Charging Party in a sexual manner approximately three to four times per day, each day during the approximately one hour period that the Line Lead's shift overlapped with Isley's shift.

26. On or about April 20, 2016, Defendant terminated the Line Lead for reasons unrelated to Isley's sexual harassment complaints.

27. Defendant subjected Isley to sexual harassment that created a hostile work environment based on Isley's sex, female.

28. The effect of the practices complained above has been to deprive Sarah Isley of equal employment opportunities and otherwise adversely affect her status as an employee, because of her sex.

29. The unlawful employment practices complained of above was intentional.

30. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Isley.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from maintaining a sexually hostile work environment.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Sarah Isley whole by providing compensation for past

and future non-pecuniary losses resulting from the unlawful employment practices described above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights, in amounts to be determined at trial.

    D.    Order Defendant to make Sarah Isley whole by providing compensation for past and future pecuniary losses resulting from the unlawful practices complained of above, in amounts to be determined at trial.

    E.    Order Defendant to pay Sarah Isley punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

    F.    Grant such further relief as the Court deems necessary and proper in the public interest.

    G.    Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

DATED this the 28th day of September, 2018.

    Respectfully submitted:

    **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

    JAMES L. LEE
    Deputy General Counsel

    GWENDOLYN YOUNG REAMS
    Associate General Counsel
    Equal Employment Opportunity Commission
    131 M Street, NE
    Washington, D.C. 20507

    LYNETTE A. BARNES
    (N.C. Bar No. 19732)
    Regional Attorney

KARA GIBBON HADEN
(N.C. Bar No. 26192)
Supervisory Trial Attorney

**s/** *Rachael S. Steenbergh-Tideswell*
RACHAEL S. STEENBERGH-TIDESWELL
South Carolina Federal Bar No. 10867
Senior Trial Attorney
Charlotte District Office
129 West Trade Street, Suite 400
Charlotte, North Carolina 28202
Telephone: (704) 954-6472
Facsimile: (704) 954-6412
Email: rachael.steenbergh@eeoc.gov

**ATTORNEYS FOR PLAINTIFF**